**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RAYMOND YAREM, | |
| Plaintiff, | No. 22 CV 3752 |
| v. | Judge Manish S. Shah |
| OFFICER DAN DUDA and VILLAGE OF EAST DUNDEE, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Defendant Officer Dan Duda arrested plaintiff Raymond Yarem, a resident of East Dundee, Illinois, for violating an order of protection. Yarem filed this suit alleging that Duda wrongfully arrested him and used excessive force when doing so, in violation of Yarem's Fourth Amendment rights. Defendants Duda and the Village of East Dundee filed a motion for summary judgment, [46]; Yarem failed to respond to the motion with any legal argument or properly presented evidence. *See* [58]. After reviewing the record in the light most favorable to Yarem, summary judgment is appropriate for defendants because there are no issues of material fact about whether Duda had probable cause to arrest Yarem or used excessive force in doing so. Furthermore, there are no issues of material about whether Duda is entitled to qualified immunity on the two constitutional claims. Yarem has not made a showing that Duda acted in a manner that was willful and wanton, so Duda is protected by the Illinois Tort Immunity Act against state law tort claims. Summary judgment is entered for defendants.

## I.    Legal Standard

"Summary judgment is appropriate when, taking all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law." *Moorer v. City of Chicago*, 92 F.4th 715, 720 (7th Cir. 2024); Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Biggs v. Chicago Bd. of Educ.*, 82 F.4th 554, 559 (7th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment is also appropriate when "a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II.    Facts

East Dundee Police Officer Dan Duda observed Raymond Yarem walking north on a bike path directly in line with 210 N. River Street in East Dundee, Illinois, at around 7:00 a.m. [48] ¶¶ 8, 9.[1] Duda knew that Yarem was the respondent on an

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced paged numbers are taken from the CM/ECF header placed at the top of filings. In accordance with Local Rule 56.1, defendants submitted a statement of facts and attached the evidence upon which those facts relied. *See* [48], [48-1]–[48-5], [52], [53]. Plaintiff filed a one-page response to defendants' motion and Local Rule 56.1 statement of facts, [58], which responds to several of defendants' statements of facts and asserts some new facts. I compared the document to plaintiff's deposition testimony and accept only those facts that are supported by plaintiff's testimony. N.D. Ill. Local R. 56.1(d)(2) (all asserted facts must be supported by citation to specific evidentiary material that supports it). Because plaintiff did not properly respond to defendants' Local Rule 56.1 statement of facts, those facts are deemed admitted. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); N.D. Ill. Local R. 56.1(e)(3).

order of protection that prohibited Duda from being within 500 feet of 210 N. River Street and was familiar with Yarem due to prior encounters. [48] ¶¶ 10, 13.[2] Duda saw Yarem on the bike trail immediately west of the protected address. [48] ¶¶ 9, 11. Duda was driving south in his car; he turned a corner, put his car into park, exited the car, and began calling Yarem's name. [48] ¶ 12. Yarem started walking faster away from Duda. [48] ¶ 12.

Duda yelled again at Yarem to stop and told him he was in violation of an order of protection; Yarem continued walking away and Duda yelled louder for Yarem to stop and that Yarem was under arrest. [48] ¶ 12. Duda ran up to Yarem, grabbed his arm, and ordered Yarem to stop. [48] ¶ 12. Yarem testified that when he saw Duda's squad car he "kept walking" and then one of the officers, "screamed out. He goes, you are arrested. I go, for what. And they both came out, and that's when he injured me[.]" [48-5] at 26:12–21.[3]

Duda requested assistance over his radio and East Dundee Police Officer Kasiba arrived at the scene. [48] ¶ 14. Duda walked Yarem to a parked vehicle and placed Yarem against the vehicle to prevent Yarem from walking away. [48] ¶ 15. The video of the arrest confirms that Duda walked Yarem against a parked car. [53]

---

[2] Yarem states that he had been told by the judge in the order of protection case that he could walk through town when the offices at the protected address were closed. *See* [58] at 1; [48-5] at 27:4–14. In his complaint, Yarem states that he was told he only had to stay 50 feet away from the protected address and that Duda arrested him for being within 500 feet of the address. [20] ¶ 10. Yarem therefore admits that he was somewhere between 50 and 500 feet of the protected address at the time that Duda saw him.

[3] Yarem asserts in his response that he did not hear Duda initially yelling him because he was walking extremely fast, *see* [58] at 1, but that statement is not supported by Yarem's deposition testimony and he provides no other admissible evidence to support the assertion.

at 0:00–0:03.[4] Duda put a pair of handcuffs on Yarem's left wrist. [48] ¶ 16. Yarem said, "be easy, that's my same wrist you hurt last time." [53] at 0:03–0:11.[5] Officer Kasiba, on Yarem's right side, asked Yarem to set his phone down and Yarem complied. [53] at 0:11–15. Yarem then shouted, "Ow", "take it easy" and "I'm in pain," walked around, and addressed bystanders who were watching the encounter. [53] at 0:15–28.

Duda asked Kasiba for a second pair of handcuffs, put the second set of handcuffs on Yarem's right wrist, and interlocked them together. [48] ¶ 16. At some point, one of the officers shouted, "Give me your hand" and "Knock it off." [53] at 0:28–0:35. Duda stated that he took the two-handcuff approach because Yarem was tensing up in order to not be handcuffed. [48] ¶ 16. Duda checked both of Yarem's wrists and determined that he could get two fingers between Yarem's wrist and the cuffs; he then proceeded to double lock the handcuffs as per protocol. [48] ¶ 16. Yarem

---

[4] Defendants submit a video of the encounter between Yarem, Duda, and Kasiba as Exhibit A to their Local Rule 56.1 statement of facts. *See* [48-1], [52], [53]. Properly authenticated video and tapes can be considered at summary judgment; "to authenticate an item, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001) (quoting Fed. R. Evid. 901(a)). The exhibit submitted to the court is a video of a computer screen playing a video. *See* [53]. Duda and Kasiba both attest that the "arrest and handcuffing of Yarem … is accurately depicted in the video of this incident, which I have reviewed and understand to be Exhibit A to Defendants' Motion for Summary Judgment." [48-2] ¶ 5; [48-3] ¶ 3. Yarem acknowledged in his deposition that a video of the arrest existed, but nothing in his deposition testimony establishes that the video he watched then is the same as Exhibit A. *See* [48-5] at 28:9–29:9; [48] ¶ 20. However, Yarem does not dispute in his filing that Exhibit A is a video of his arrest; his only comment is that the video does not accurately depict the amount of force used because Duda's body blocks the view. [58]. I review the video taking all reasonable inferences in favor of Yarem, the non-moving party. *See Moorer*, 92 F.4th at 720.

[5] Yarem says that Duda hurt his wrist in an earlier arrest made in November 2019 for emptying a birdfeeder on communal property. [58] at 1; [48-5] at 16:24–17:02, 35:2–35:12.

4

continued to shout "ow" and "easy," made comments about whether he is resisting arrest, and referenced an earlier encounter with Duda while the officers handcuffed him. [53] at 0:35–1:05.

Duda and Kasiba escorted Yarem back to Duda's squad car, which was about 100–150 feet away; Duda stated that Yarem spoke to him and Kasiba in a rude and insulting manner the entire time. [48] ¶ 17. Yarem was put in the back seat of Duda's car and driven to the station; Duda announced via radio that he had a subject in custody and was bringing him to the station. [48] ¶ 18.

At the station, Yarem got out of the car and walked into the booking room. [48] ¶ 23. East Dundee Police Officer Andrews was at the station; as she held the door open to the booking room, she heard Duda tell Yarem that he was going to remove the handcuffs and Yarem responded that the cuffs were on too tight. [48] ¶ 24. Andrews put her hands around Yarem's right arm and told him that she could fit two fingers between his wrist and the handcuffs. [48] ¶ 25. Andrews observed Yarem's wrist to be turned in a manner that pressed his wrist against the handcuffs; Andrews tried to help Yarem turn his wrist to be more comfortable, but he continued to keep it pressed up against the handcuff. [48] ¶ 26.

Once Yarem was placed into a holding cell, he picked up the phone in the cell and called the dispatch center to report that his wrist was injured and that he needed an ambulance. [48] ¶¶ 28–29. East Dundee firefighters arrived and transported Yarem to Sherman Hospital. [48] ¶ 30. Yarem acknowledged that his wrist was not broken as a result of the arrest. [48] ¶ 35. At his deposition, Yarem testified that he'd

had issues with his right wrist dating back to November 2019. [48] ¶ 35. Yarem had surgery for "carpal tunnel syndrome" on his right wrist several months after the July 2020 arrest. [48] ¶ 35; [48-5] at 34:13–35:16. Yarem had been receiving chiropractic treatments to his right wrist prior to 2020. [48] ¶ 35.

Yarem was later convicted of violating the order of protection, and Officers Duda, Kasiba, and Andrews were acting in their official capacities as police officers. [48] ¶¶ 36–37.

## III. Analysis

Yarem's amended complaint, [20], is the operative complaint in this case and it can be read to bring three claims—the first is a constitutional claim for false arrest, the second is a constitutional claim for excessive force, and the third is a general claim for all state law protections that may be implicated by his factual allegations, such as false arrest, assault, battery, false imprisonment, malicious prosecution, etc. [20] ¶¶ 6, 10, 14.

### A. Fourth Amendment Violation – Wrongful or False Arrest

"To state a claim under the Fourth Amendment, a plaintiff must show that a search or seizure occurred and that the search or seizure was unreasonable." *Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023). A seizure is reasonable when the officer has probable cause that the individual is engaging in criminal activity. *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) ("In other words, if an officer has probable cause to arrest a suspect, the arrest was not false."). "Probable cause" is determined by considering whether "the facts and circumstances within the officer's knowledge are

sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed, is committing, or is about to commit an offense." *Id.* (cleaned up). Probable cause is an absolute defense to a false arrest claim. *Id.*

Officer Duda had probable cause to arrest Yarem for violating the order of protection because he observed Yarem less than 500 feet from a protected location. *Jump v. Village of Shorewood*, 42 F.4th 782, 789 (7th Cir. 2022) (Probable cause "exists at arrest when a reasonable officer with all the knowledge the on-scene officers would have believed that the suspect committed an offense defined by state law."). Violating an order of protection is a criminal offense. *See* 720 ILCS 5/12-3.4(a). Duda knew that Yarem had an order of protection entered against him and that the order of protection prevented Yarem from being within 500 feet of 210 N. River St. [48] ¶ 10. Duda observed Yarem across the street from protected address and Yarem does not deny he was within 500 feet of the protected address. *See* [48] ¶ 9; [20] ¶ 10.

Qualified immunity shields officers from liability if "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Mwangangi v. Nielsen*, 48 F.4th 816, 825 (7th Cir. 2022) (describing "arguable probable cause"). Duda certainly had "arguable probable cause" to believe that Yarem was violating the terms of the order of protection because he knew that Yarem was not supposed to be near the protected address and based on the facts in the record, it was reasonable for Duda to believe Yarem was within 500 feet of the protected

address. *See Mwangangi*, 48 F.4th at 830–31 (qualified immunity determined by whether officer's subjective belief was objectively reasonable).

Summary judgment is appropriate for defendants on the Fourth Amendment wrongful arrest claim.

### B. Fourth Amendment Violation – Excessive Force

Even when a seizure is otherwise reasonable under the Fourth Amendment, a law enforcement officer may not use excessive force in seizing an individual. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 724 (7th Cir. 2013). The law recognizes that along with the right to make an arrest comes "the right to use some degree of physical coercion." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Rabin v. Flynn*, 725 F.3d 628, 636 (7th Cir. 2013). But the physical force must not be more than was "reasonably necessary to effectuate the arrest" based on the "totality of the circumstances at the time of the arrest." *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021). Whether an officer used excessive force is an objective inquiry based on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Gupta*, 19 F.4th at 996 (quoting *Graham*, 490 U.S. at 396).

When assessing an excessive-force claim, it is "useful to pin down the quantum of force [used], which represents the nature and significance of the governmental intrusion on their Fourth Amendment interests." *Abbott*, 705 F.3d at 725. A law enforcement "officer may not knowingly use handcuffs in a way that will inflict

8

unnecessary pain or injury on an individual who presents little or no risk of flight or injury." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009). But handcuffing an arrestee is a routine action and where there is no "indication that an arrest was effected in an unusual or improper manner," an excessive force claim "has no possible merit." *Gibson v. Picou*, 101 Fed. App'x 154, 157 (7th Cir. 2004) (quoting *Braun v. Baldwin*, 346 F.3d 761, 763 (7th Cir. 2003)). Nothing suggests that Duda and Kasiba's arrest of Yarem was effectuated in an unusual manner; the evidence in the record is that Duda followed protocol for handcuffing an arrestee. Duda used two handcuffs linked together, which provides more distance between the arms, double-locked the handcuffs so they would not tighten over time, and he and Andrews confirmed that two fingers could be placed between the cuffs and Yarem's wrist. [48] ¶¶ 16, 25.

Yarem cried out as the officers were handcuffing him and reminded the officers that his wrist had been previously injured, which is a factor in determining whether the officers behaved reasonably. *See Rabin*, 725 F.3d at 636 (when arrestee told officer about pre-existing condition that could have been exacerbated by tight handcuffs, it was unreasonable to keep the handcuffs so tight). But Yarem's complaints did not tell the officers what it was they were doing that was hurting him—he yelled "easy" and "that's my injured wrist" while the officers were handling *both* wrists, *see* [53] at 0:03–0:35, and did not indicate whether the position of his arm or the placement of his wrists caused him pain. *See Stainback*, 569 F.3d at 773 ("[G]eneralized complaints, without elaboration of preexisting injury or other infirmity, would not have placed a reasonable officer on notice that [plaintiff] would be injured by these actions.");

9

*Howell v. Smith*, 853 F.3d 892, 899–900 (7th Cir. 2017) (officer had "nonspecific information" about injury to defendant so could not properly evaluate the risk of injury as compared to the need to detain the individual). No jury reviewing the video could find that Yarem was in so much pain that he was incapable of informing the officers of what it was they were doing that was hurting him.

Furthermore, because a person has the right to be free from an officer's knowing use of handcuffs in a way that causes unnecessary pain or injury, whether an injury actually occurred can be relevant to determining whether the force used was excessive. *See Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (relying in part on lack of injury to find that force used was not excessive). Yarem has not put any evidence into the record about his injury other than his deposition testimony that he had to have surgery on his right wrist several months after his arrest. [48] ¶ 35. There is no evidence in the record that the surgery to Yarem's wrist was a direct result of the force used against him during the July 2020 arrest.

Considering the other *Graham* factors, the crime for which Yarem was being arrested, violation of an order of protection, can be quite serious, but there is no evidence to suggest that Yarem was posing a threat to others or to the officers. On the other hand, the quantum of force exercised against Yarem was minimal and there is no evidence in the record to suggest that the officers intended to cause Yarem harm—indeed Duda made sure to check that the handcuffs were not on too tight. A jury reviewing the evidence in the record could not reasonably find that Duda used

more force than was reasonably necessary to restrain Yarem; there was no violation of Yarem's constitutional rights.

Even were a jury to find that Duda used more force than was reasonably necessary to restrain Yarem, Duda would be protected by qualified immunity. Officers are entitled to qualified immunity against excessive force claims when their conduct does not violate a clearly established constitutional right. *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id*. at 698 (cleaned up). Defendants raised the defense of qualified immunity, so it is incumbent on Yarem to point to a clearly established right that Duda violated. *See Fosnight v. Jones*, 41 F.4th 916, 924 (7th Cir. 2022). Yarem has not done so here.

There is a clearly established right to be free from handcuffing performed in a way to cause unnecessary pain or injury, and an officer must take into account known preexisting medical problems when acting to subdue an arrestee. *See Stainback*, 569 F.3d at 772. But there is no evidence that Duda or Kasiba acted to cause Yarem pain. Duda took Yarem's complaints into account by checking to make sure that he could fit two fingers between Yarem's wrist and the cuffs. There is no authority to support the proposition that Duda's behavior was in violation of a clearly established constitutional right and he is entitled to qualified immunity.

11

C.    **State Law Claims**

Defendants argue that summary judgment is appropriate on Yarem's state law claims because Yarem does not point to any specific facts to support his claims and local law enforcement officers are protected from tort liability unless their behavior "constitutes willful and wanton conduct." *See* [47] at 8–9; 745 ILCS 10/2-202.[6] "Willful and wanton" is defined by the statute as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. There is no evidence in the record on which a reasonable jury could rely to find that Duda, Kasiba, or Andrews acted with a deliberate intention to cause harm or with utter indifference or conscious disregard for Yarem's safety. Summary judgment is thus appropriate for defendants on all state law tort claims.

## IV.    Conclusion

Defendants' motion for summary judgment, [46], is granted. Enter judgment in favor of defendants and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: July 22, 2024

---

[6] I choose to continue to exercise supplemental jurisdiction over Yarem's state law claims because the claims are based on the same underlying facts, the parties have already been given the opportunity to complete discovery and summary judgment briefing on the claims, and it is clear that the claims are barred by the Illinois Tort Immunity Act. *See Doe v. Village of Arlington Heights*, 782 F.3d 911, 920–21 (7th Cir. 2015).